UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>)<br><br>)<br>          v.                    )<br>                                )<br>                                )<br>DARRYL ANTONIO CARTER,      )<br>                                )<br>          Defendant.       )<br>                                ) | Criminal No. 04-155 (GK)<br>Civil No. 05-1402 (GK) |

Memorandum Opinion

Defendant, Darryl Antonio Carter, brings this Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 ("Section 2255"), alleging ineffective assistance of counsel in violation of the Sixth Amendment.[1]  Upon consideration of Defendant's Motion, the Government's Opposition thereto, the Reply, the representations of the parties at an evidentiary hearing held on May 1, 2006, and the entire record herein, and for the reasons discussed below, the Motion is hereby **denied.**

---

[1]  Section 2255 reads in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

I.    **BACKGROUND**

A.    **Facts**

On July 7, 2004, Defendant pled guilty to the following offenses: (1) Robbery Obstructing Commerce, in violation of 18 U.S.C. § 1951 (also known as the "Hobbs Act"); and (2) Using a Firearm in Furtherance of a Federal Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(B)(i). See, United States v. Darryl A. Carter, No. 04-cr-155, Plea Agreement (D.D.C. July 7, 2004). As part of his plea agreement, the United States agreed to dismiss a third pending charge against Carter for Unlawful Possession of a Firearm. Id. at 2.

By accepting the Government's plea offer, Defendant agreed that his sentence would "be determined by the Court pursuant to . . . the United States Sentencing Guidelines" ("Guidelines"). Id. Under the 2004 Guidelines, which the parties used to calculate the applicable sentence in this case, the base offense level for Defendant's Hobbs Act violation was 32, including an adjustment for his Career Offender Status. Id. at 4. Because Carter accepted responsibility by pleading guilty, the Government agreed to a three-level reduction, bringing the offense level down to 29. Id. As a result, the sentencing range for the Hobbs Act violation was 151-188 months. Id. Count Two, Using a Firearm in Furtherance of a Federal Crime of Violence, carried a mandatory minimum of 120 months to run consecutive to Defendant's other sentence. Id.

-2-

Accordingly, the parties agreed that the Guidelines range for Defendant's entire sentence would be 271 to 308 months.  Id.

In the plea agreement, Carter also agreed to waive his right to appeal the sentence except in two narrow circumstances: first, if the Court imposed a sentence longer than the statutory maximum of thirty years or 360 months; or, second, if the Court departed upward from the Guidelines range set forth in the agreement.  Id.

During the plea hearing held on July 7, 2004, the Court engaged Defendant in an extensive Rule 11 colloquy and reviewed in detail the agreement's impact on his appellate rights.  Satisfied that Carter understood the substance of the agreement, and the limits it placed on his procedural rights including his right to appeal, the Court accepted Carter's plea and set sentencing for August 13, 2004.  See U.S. v. Carter, 04-cr-155, Minute Order (D.D.C. July 7, 2004).

The parties filed their respective memoranda in aid of sentencing on August 9, 2004.  Defendant's memorandum makes note that the Supreme Court had recently granted certiorari in United States v. Booker, a case that would test whether the reasoning of Blakely v. Washington, 544 U.S. 296 (2004), would apply to the validity of the Guidelines.[2]  See Dkt. No. 18.  In the memorandum,

_____

[2]  As is now well-known, while the Court did not find the Guidelines unconstitutional per se, it held that the portions of the Sentencing Reform Act of 1984 requiring federal courts to follow the Guidelines were unconstitutional. See United States v. Booker, 543 U.S. 220 (2005).  Accordingly, although they are to be

-3-

however, Defendant concedes that even if <u>Booker</u> were to permit such appeals, the plea agreement would bar him from challenging the constitutionality of his sentence without the Government's express consent.  For that reason, Defendant offered to permit the United States to request alternative sentences, pending the resolution of <u>Booker</u>, in return for its consent to an appeal of his sentence on <u>Booker</u> or <u>Blakely</u> grounds.  <u>See</u> Opp'n at 5.  The Government rejected Carter's offer and did not consent to such an appeal.

On September 14, 2004, the Court sentenced Carter, <u>inter</u> <u>alia</u>, to incarceration for 160 months on the Hobbs Act violation and 120 months on the firearm charge, for a total of 280 months.  <u>See</u> <u>United States v. Darryl A. Carter</u>, No. 04-cr-155, Judgment (D.D.C. Sept. 14, 2004).  This sentence was less than the statutory maximum of thirty years, or 360 months, and within the Guidelines range of 271-308 months.

Carter did not challenge his sentence at the time it was imposed or on direct appeal.  In his Motion, and at the May 1, 2006 evidentiary hearing, Carter claimed that immediately after the sentence was imposed, he asked his attorney, Joseph Beshouri, if he would appeal.  Carter further testified that in a subsequent conversation that same day, in the cellblock underneath this courthouse, he again asked Beshouri to file an appeal and that

---

given serious consideration by a sentencing court, the Guidelines are now advisory rather than mandatory.

-4-

Beshouri agreed.  In his own testimony at the hearing, Beshouri denied having any such conversations with Carter.

Beshouri did, however, recount a conversation they had before sentencing in which he explained that Carter could mount a collateral attack on his sentence by filing a Section 2255 Motion alleging ineffective assistance of counsel.  As ground for such a Motion, Beshouri suggested that Defendant could argue that by failing to predict the outcome of <u>Booker</u> or to incorporate the possibility of an appeal under that outcome in the plea agreement, Beshouri, and his predecessor, Tony Axam, provided constitutionally-deficient counsel to Carter.  Beshouri admitted that he may have used the word "appeal" as a short-hand term for this strategy, but explained that he was quite sure Carter, whom he described as "a very smart man," fully understood the difference between a direct appeal of his sentence and a collateral attack on it pursuant to Section 2255.

On several occasions after he began serving the sentence imposed by this Court, Carter corresponded with Beshouri about a number of matters, including his medical condition.  Defendant did not raise the issue of a direct appeal of his sentence in any of their correspondence.  Throughout their communications, Carter evinced respect, and even fondness, for Beshouri.[3]

_____

[3]   Even after filing the instant Motion, Carter wrote to Beshouri requesting help on another matter and explained that "I hope that this 2255 wouldn't hurt you in any way.  If so, I truly

**B.    Procedural history**

Defendant filed the instant Motion on June 30, 2005.  <u>See</u> Dkt. No. 21.  After receiving one extension of time, the United States filed its Opposition October 31, 2005.  <u>See</u> Dkt. No. 26.  Defendant filed a Reply, which he titled a "Traverse," on December 28, 2005. <u>See</u> Dkt. No. 29.  On March 1, 2006, the Court ordered the Federal Public Defender for the District of Columbia to appoint counsel to represent Carter at this stage of the proceedings.  Accordingly, on March 7, 2006, Edward Sussman entered an appearance on Carter's behalf.  On May 1, 2006, the Court held an evidentiary hearing on Carter's Motion.

## II. STANDARD OF REVIEW

Pursuant to Section 2255, a court shall release or re-sentence any prisoner who can establish, <u>inter alia</u>, that his "sentence was imposed in violation of the Constitution or laws of the United States or . . . is otherwise subject to collateral attack."  <u>See</u> 28 U.S.C. § 2255.  The statute authorizes courts to grant relief only upon a determination that "the challenged sentence resulted from 'a fundamental defect which inherently results in a complete miscarriage of justice,' or 'an omission inconsistent with the rudimentary demands of fair procedure.'"  <u>United States v. Pollard</u>,

---

apologize and I would never do anything to hurt you."  <u>See</u> Gov't Ex. 6, August 8, 2005 letter from Carter to Beshouri.

959 F.2d 1011, 1020 (D.C. Cir. 1992) (internal citation omitted).

Ineffective assistance of trial counsel, in violation of the Sixth

Amendment, is an actionable claim under Section 2255.

See generally U.S. v. Taylor, 339 F.3d 973 (D.C. Cir. 2003).

## III. ANALYSIS

### A. Defendant Was Not Deprived of His Sixth Amendment Right to Effective Assistance of Counsel Because Beshouri's Representation Did Not Fall Below an Objective Standard of Reasonableness

Carter claims that by failing to follow what he alleges were

explicit instructions to file an appeal, Beshouri deprived him of

his Sixth Amendment right to effective assistance of counsel.[4]

Claims of ineffective assistance of counsel are governed by

the familiar analysis set forth in Strickland v. Washington, 466

U.S. 668 (1984).  There, the Supreme Court held that a criminal

defendant alleging ineffective assistance must establish: (1) that

"counsel's representation fell below an objective standard of

---

[4]   At the evidentiary hearing, Sussman argued that both
Beshouri and Axam, Carter's first attorney in this case, failed to
extract sufficient concessions from the Government during plea
negotiations.  This failure, Sussman argued, also constituted
ineffective assistance of counsel.  While Sussman asserted he was
merely "fleshing out" arguments contained in Carter's original pro
se Motion, the issue of counsel's effectiveness during plea
negotiations was not raised in that pleading.  Because this is a
new claim that has been raised outside the statute of limitations
set forth in Section 2255, the Court will not address it further.
See 28 U.S.C. § 2255 (noting, inter alia, that the Section only
permits claims brought within one year of the date on which the
judgment of conviction becomes final).

reasonableness;" and (2) that "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687-88. In Roe v. Flores-Ortega, the Court explained that the Strickland analysis also applies where the ground for an ineffective assistance claim is a defense attorney's alleged failure to file an appeal or to consult with her client about filing an appeal. See Roe v. Flores-Ortega, 528 U.S. 470, 477.

In this context, a court must consider three issues to determine whether the first Strickland prong, objective reasonableness, has been met: first, whether the defendant explicitly instructed his attorney to file a notice of appeal; second, whether the defendant explicitly instructed his attorney not to file a notice of appeal; and, third, whether, in the absence of explicit instructions one way or the other, it was reasonable for the defense attorney not to have consulted with her client about an appeal. See Flores-Ortega, 528 U.S. at 477-81; see also United States v. Taylor, 339 F.3d 973 (D.C. Cir. 2003). The second issue has not been raised in this case, and thus the Court must only address the first and third.

> **1.   Carter did not instruct Beshouri to file an appeal**

Because there is a dispute over whether Carter in fact instructed Beshouri to file an appeal of his sentence, the resolution of this issue turns entirely on a credibility

determination of the competing testimony given at the evidentiary hearing.

Beshouri, whom the Court knows to be a skilled, conscientious, diligent, and effective attorney, gave testimony that was entirely credible.  He gave candid answers to every question posed to him and offered detailed explanations of the strategic decisions he made while representing Carter.  His testimony indicated that, without question, he knows the importance of preserving a client's appellate rights, of filing a notice of appeal where appropriate, and, above all, of following a client's instructions.  It also demonstrated the high regard in which Beshouri holds his clients, especially Carter, and his obvious respect for them and their wishes.  Where, as here, there is no evidence apart from Carter's bare assertion to the contrary, the Court simply cannot believe that an attorney as intelligent, experienced, and forthright as Beshouri would fail to appeal his client's case if he was instructed to do so.

In contrast, Carter, whom the Court knows to be a highly intelligent man, gave testimony that was unreliable for at least three reasons.  First, Carter has every reason in the world to lie in this case and, not surprisingly, his testimony was wholly self-serving.  Second, the Government successfully impeached Carter with a variety of prior convictions, all of which suggest that his credibility is highly suspect.  Third, and finally, the Court does

not believe that a man as smart and savvy as Carter would not recognize that the sentence imposed in this case could not be appealed on either of the grounds left open by his plea agreement. Having been exposed to the criminal justice system throughout his life, and having participated in the Rule 11 colloquy, it is clear that Carter understands the binding nature of such an agreement. The testimony he gave indicates that he also understood how severely the agreement in this case limited his appellate rights. Finally, if he had instructed Beshouri to file an appeal, it is difficult to believe he would not have inquired in one of the letters he wrote about its status.

For these reasons, the Court does not credit Carter's testimony that he instructed Beshouri to file an appeal.

### 2. Beshouri's decision not to consult with Carter about an appeal was reasonable

Having found that Carter did not instruct Beshouri to file an appeal, the Court must now address the dispositive question in this case: whether Beshouri's decision not to consult with Carter about an appeal was reasonable?

Although recognizing that it is good practice to do so, the Supreme Court, in Flores-Ortega, refused to hold that it is a per se requirement that defense attorneys consult with their clients regarding an appeal in every case.  Instead, the Court held that "counsel has a constitutionally imposed duty to consult with the

defendant about an appeal where there is reason to think either (1) that a rational defendant would want to appeal (for example because there are nonfrivolous grounds for appeal) or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."   Flores-Ortega, 528 U.S. at 480.   In making this determination, courts must focus "on the totality of the circumstances."   Id.

Applying these principles to the facts of this case, there is no question that Beshouri's decision not to consult with Carter was reasonable.   First, there were no nonfrivolous grounds on which Carter could have appealed his sentence.   As noted supra, the Court imposed a sentence of 280 months in this case.   Because that sentence exceeded neither the statutory maximum nor the Guidelines range, it could not be appealed on either of the grounds left open by Carter's plea agreement.   Any appeal would necessarily have been frivolous, and thus no rational defendant would have wished to file one.

Second, apart from Defendant's after-the-fact claims, which the Court has already found unreliable, there is no evidence that Carter demonstrated an interest in appealing his sentence.   On the contrary, the testimony given at the evidentiary hearing, as well as the documentary evidence introduced by the Government, indicates that Carter and Beshouri spoke or corresponded several times in the months following Carter's sentencing.   While Carter continued to

request Beshouri's help on a number of matters, he never raised the issue of an appeal in this case.[5]  Nor did Carter ever express frustration or dissatisfaction with Beshouri's representation. Carter's tone throughout their correspondence belies his contention that he was upset with Beshouri for failing to file an appeal and, even now, Carter admits that he holds Beshouri in high regard.

Where, as here, no rational defendant would want to file an appeal, and there is no evidence that the defendant actually indicated a desire to do so, a defense attorney is under no obligation to consult with his client about an appeal.  Beshouri's decision not to consult with Carter about an appeal, therefore, was reasonable and did not deprive Carter of his Sixth Amendment right to effective assistance of counsel.

Because Beshouri's representation did not fall below an objective standard of reasonableness, it is not necessary for the Court to address the second prong of the Strickland analysis. See Strickland, 466 U.S. at 687.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, Defendant's Motion to Vacate, Set Aside, or Correct Sentence is hereby **denied.**

---

[5]  As noted supra, Beshouri did inform Carter that he could file a collateral attack on his sentence pursuant to Section 2255, alleging ineffective assistance of counsel.  According to Beshouri's testimony, however, this conversation occurred before sentencing.

An Order will issue with this Memorandum Opinion.


                                    _/s/_____
May 9, 2006                         Gladys Kessler
                                    U.S. District Judge


**Copies to**: **attorneys on record via ECF**