# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 04-cr-0155 (ESH) |
| | ) | |
| DARRYL CARTER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Defendant Darryl Carter was convicted in 2004 of one count of Hobbs Act robbery in violation of 18 U.S.C. § 1951 and one count of using a shotgun during a crime of violence (the Hobbs Act robbery) in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (B)(i). (*See* Judgment, Sept. 14, 2004, ECF No. 19.) Under the then-mandatory Sentencing Guidelines, he was sentenced to 160 months imprisonment for the Hobbs Act robbery conviction because of his status as a career offender under § 4B1.1 of the Guidelines, and a consecutive 120 months imprisonment for the § 924(c) conviction (the statutory mandatory minimum), resulting in a total sentence of 280 months imprisonment. (*Id.*) His projected release date is October 13, 2027.

Before the Court is defendant's motion, filed pursuant to 28 U.S.C. § 2255, asking the Court to vacate his Hobbs Act robbery sentence and his § 924(c) conviction in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015).[1] For the reasons set forth herein, defendant's motion is granted in part and denied in part. His motion to vacate his § 924(c) conviction is denied, but his motion to vacate his Hobbs Act robbery sentence is

---

[1] This case was reassigned to the undersigned after the retirement of the sentencing judge.

granted and he will be resentenced on that count without application of the career offender Guideline.

## BACKGROUND

### I.    FACTUAL BACKGROUND

The facts relevant to this motion can be briefly summarized.  Pursuant to a plea agreement, defendant pleaded guilty to one count of Hobbs Act robbery in violation of 18 U.S.C. § 1951 and one count of using a shotgun during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and  (B)(i).  In his plea agreement, defendant admitted to three prior convictions: (1) indecent act on a minor in violation of D.C. law (D.C. Superior Court, No. 1989FEL001205); (2) escape in violation of D.C. law (D.C. Superior Court, No. 1996FEL007425); and (3) unlawful possession of a firearm by a convicted felon in violation of federal law (U.S. District Court for D.C., No. 96-CR-480).  He further agreed that these convictions rendered him a career offender under § 4B1.1(a) of the then-mandatory federal Sentencing Guidelines because at least two were convictions for "crimes of violence."[2]

At sentencing, the court applied the career offender Guideline and determined that defendant's sentencing range for the Hobbs Act robbery conviction was 151-188 months.[3]

_____

[2] Section 4B1.1(a) provides that:

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

[3] Defendant's offense level (after a 3-level reduction for acceptance of responsibility) was 29, and his criminal history category was VI.

Combined with the statutory mandatory minimum consecutive sentence of 120 months for the § 924(c) conviction, defendant's combined sentencing range was 271-308 months. The judge imposed a sentence of 280 months: 160 months for the Hobbs Act robbery conviction and 120 months for the § 924(c) conviction.

## II. THE SUPREME COURT'S "RESIDUAL CLAUSE" DECISIONS: *JOHNSON* (2015); *WELCH* (2016); *BECKLES* (2017), *DIMAYA* (2018) AND *DAVIS* (2019)

Eleven years after defendant was sentenced, the Supreme Court issued a series of "residual clause" decisions.

### A. *Johnson*

The first case was *Johnson v. United States*, which concerned the "residual clause" in the Armed Career Criminal Act's ("ACCA") definition of a violent felony. 135 S. Ct. 2551 (2015). The ACCA provides that a defendant convicted of violating 18 U.S.C. § 922(g) who has "three previous convictions . . . for a violent felony or a serious drug offense" is subject to a mandatory minimum sentence of 15 years imprisonment. 18 U.S.C. § 924(e)(1). The term "violent felony" is defined to include "any crime punishable by imprisonment for a term exceeding one year . . . that--

> **(i)** has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> **(ii)** is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C.A. § 924 (emphasis added). The italicized portion of subsection (ii) is referred to as the "residual clause." In *Johnson*, the Supreme Court held that the ACCA's residual clause was void for vagueness under the Fifth Amendment's due process clause. *Johnson*, 135 S. Ct. at 2557. The Court observed that the Due Process Clause prohibits the government from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary

people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Id.* at 2556. The Court went on to explain that under this standard, "[t]wo features of [ACCA's] residual clause conspire to make it unconstitutionally vague." *Id.* at 2557. First, because courts used the "categorical approach" to decide which crimes were covered by the residual clause, it created "grave uncertainty about how to estimate the risk posed by a crime." *Id.*[4] Second, "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id*. at 2558. The Court concluded that "[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony," the ACCA's residual clause "produce[d] more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*

### B. *Welch*

In *Welch v. United States*, the Supreme Court held that its decision in *Johnson* applied retroactively to cases on collateral review. 136 S. Ct. 1257, 1265 (2016) ("*Johnson* is ... a substantive decision and so has retroactive effect . . . in cases on collateral review.").

*Johnson* and *Welch* spawned a flood of § 2255 motions from defendants seeking to vacate ACCA convictions and also from defendants who had been convicted or were serving sentences based on similarly-worded "residual clauses" in other federal statutes or in the Sentencing Guidelines. In this jurisdiction, though, it was agreed to defer full briefing on the non-ACCA motions until the Supreme Court ruled on the "residual clause" cases before it. (*See* Standing Orders.)

---

[4] Under the categorical approach, the residual clause "ties the judicial assessment of risk to a judicially imagined ordinary case of a crime, not to real-world facts or statutory elements," but, the Court concluded, it "offer[ed] no reliable way" to discern what the ordinary version of an offense looked like. *Johnson*, 135 S. Ct. at 2557-58.

**C.** **_Beckles_**

The first of these cases was _Beckles v. United States_, which challenged the residual clause in the "career offender" provision of the Sentencing Guidelines. 137 S. Ct. 886, 890 (2017). The career offender Guideline in effect at the time Beckles was sentenced provided that a "crime of violence" included

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, _or otherwise involves conduct that presents a serious potential risk of physical injury to another_.

U.S.S.G. § 4B1.2(a) (emphasis added to "residual clause"). This clause is identical to the ACCA's residual clause and to the one that was in effect when defendant was sentenced. However, unlike defendant, Beckles was sentenced after the Supreme Court's ruling that the mandatory Guidelines were unconstitutional.[5] For a majority of the Court, this distinction was critical, forming the basis for their conclusion that Beckles was not sentenced pursuant to an unconstitutionally vague residual clause because "the _advisory_ Guidelines are not subject to vagueness challenges under the Due Process Clause."[6] _Beckles_, 137 S. Ct. at 890 (emphasis added). The Court explained:

---

[5] In _United States v. Booker_, 543 U.S. 220 (2005), the Supreme Court jettisoned the mandatory aspect of the Guidelines.

[6] The Court's decision "upend[ed] the law of nearly every Court of Appeals to have considered this question." _Beckles_, 137 S. Ct. at 902 & n.3 (Sotomayor, J., concurring in the judgment) (citing _United States v. Hurlburt,_ 835 F.3d 715, 721-25 (7th Cir. 2016) (abrogated by _Beckles_); _United States v. Calabretta,_ 831 F.3d 128, 136-37 (3d Cir. 2016) (same); _United States v. Sheffield,_ 832 F.3d 296, 312-13 (D.C Cir. 2016) (same); _United States v. Pawlak,_ 822 F.3d 902,

> [T]he Due Process Clause prohibits the Government from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Applying this standard, the Court has invalidated two kinds of criminal laws as "void for vagueness": laws that *define* criminal offenses and laws that *fix the permissible sentences* for criminal offenses.

*Id.* at 892 (quoting *Johnson*, 135 S. Ct. at 2556). The Court found that the advisory Guidelines, unlike the ACCA, "do not fix the permissible range of sentences. To the contrary, they merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.*. Accordingly, the Court concluded that the advisory Guidelines could not be unconstitutionally vague. *Id.*

Justices Ginsburg and Sotomayor concurred in the judgment. believing that the case should have been decided on the much narrower ground that § 4B1.2 was not vague as applied to Beckles. *See id.* at 897-98 (Ginsburg, J., concurring); *id.* at 898 (Sotomayor, J., concurring).[7] Justice Sotomayor also wrote separately to explain that although she did not agree with the Court's holding that the advisory Guidelines were not subject to vagueness challenges,[8] the

---

905-911 (6th Cir. 2016) (same); *United States v. Madrid,* 805 F.3d 1204, 1210-11 (10th Cir. 2015) (same)).

[7] Both believed that § 4B1.2 was not vague as applied to Beckles because "the official commentary to the career-offender Sentencing Guideline expressly designated his offense of conviction—possessing a sawed-off shotgun as a felon—a 'crime of violence.'" *Beckles*, 137 S. Ct. at 897-98 (Ginsburg, J.) (quoting U.S.S.G. § 4B1.2(a), comment., n. 1 (Nov. 2006)); *id.* at 898 ("Sotomayor, J.) ("Justice Ginsburg explains why the Court's holding today is unnecessary.").

[8] Justice Sotomayor explained that she thought the Court's holding was "deeply unsound" because:

> The Guidelines anchor every sentence imposed in federal district courts. They are, in a real sense[,] the basis for the sentence. The Due Process Clause requires that rules this weighty be drafted with sufficient definiteness that ordinary people can understand" them, and in a manner that does not encourage arbitrary and discriminatory enforcement.

majority's analysis at least left open the question whether the residual clause in the mandatory Guidelines was unconstitutionally vague:

> The Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in *United States v. Booker*, 543 U.S. 220 (2005)—that is, during the period in which the Guidelines *did* "fix the permissible range of sentences,"—may mount vagueness attacks on their sentences.

*Beckles*, 137 S. Ct. at 903 n.4 (Sotomayor, J.) (quoting *id*. at 892) (internal citations omitted).

### D.    *Dimaya*

Next came *Sessions v. Dimaya*, which challenged the constitutionality of a similarly-worded "residual clause" in the definition of a "crime of violence" in 18 U.S.C. § 16.[9]  *Sessions v. Dimaya*, 138 S. Ct. 1204, 1210 (2018).[10]  In what it described as a "straightforward application" of its "straightforward decision" in *Johnson*, the Supreme Court held that § 16's "similarly worded" residual clause was unconstitutionally vague.  *Id*. at 1213.  The Court explained that "*Johnson* effectively resolved the case now before [it]" because "§ 16's residual

---

*Beckles*, 137 S. Ct. at 898 (Sotomayor, J.) (internal quotations and citations omitted).

[9] A "crime of violence" is defined in 18 U.S.C. § 16 as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) *any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*

18 U.S.C. § 16 (emphasis added to "residual clause")

[10] In *Dimaya*, § 16(b) came into play through the Immigration and Naturalization Act ("INA") because the INA incorporates § 16(b)'s definition of a "crime of violence" into its definition of an "aggravated felony."  *See* 8 U.S.C. § 1101(a)(43)(F).  The INA imposes a number of negative consequences if an alien is convicted of an "aggravated felony" after entering the United States. *See* 8 U.S.C. § 1227(a)(2)(A)(iii), §§ 1229b(a)(3), (b)(1)(C).

clause has the same two features as ACCA's, combined in the same constitutionally problematic way." *Id.*[11]

## E. *Davis*

Finally came *United States v. Davis*, in which the Supreme Court considered whether the residual clause in 18 U.S.C. § 924(c)'s definition of a "crime of violence" was void for vagueness. 139 S. Ct. 2319, 2324 (2019). In § 924(c), a "crime of violence" is defined as "an offense that is a felony" and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) *that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*

18 U.S.C. § 924(c)(3) (emphasis added to "residual clause"). The Court concluded that this residual clause was unconstitutionally vague. *Davis*, 139 S. Ct. at 2325-27.[12]

---

[11] The Court explained:

> To begin where *Johnson* did, § 16(b) also calls for a court to identify a crime's "ordinary case" in order to measure the crime's risk. . . .
>
> And § 16(b) also possesses the second fatal feature of ACCA's residual clause: uncertainty about the level of risk that makes a crime "violent." . . .
>
> In sum, § 16(b) has the same "[t]wo features" that "conspire[d] to make [ACCA's residual clause] unconstitutionally vague." It too "requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents" some not-well-specified-yet-sufficiently-large degree of risk. The result is that § 16(b) produces, just as ACCA's residual clause did, "more unpredictability and arbitrariness than the Due Process Clause tolerates."

*Dimaya*, 138 S. Ct. at 1215-16 (quoting *Johnson*, 135 S. Ct. at 2556-58) (internal citations omitted).

[12] In *Davis*, the government did not dispute that § 924(c) was unconstitutionally vague if the categorical approach applied. 139 S. Ct. at 2326-27. But it argued that the categorical approach

## III.    DEFENDANT'S § 2255 MOTION

On May 31, 2016, defendant petitioned the D.C. Circuit pursuant 28 U.S.C. § 2255(h)(2)

for authorization to file a second or successive 2255 motion "on the basis of *Johnson v. United*

*States*, 135 S. Ct. 2551 (2015)."[13]  He sought permission to file two "residual clause" claims: (1)

a claim challenging "his § 924(c) conviction based on *Johnson*'s holding that the residual clause

in the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), § 924(e)(2)(B)(ii)--which is

materially identical to § 924(c)'s residual clause--is unconstitutionally vague"; and (2) a claim

challenging "his career offender sentence under U.S.S.G. § 4B1.1, which incorporates  through

U.S.S.G. § 4B1.2(a) a residual clause identical to the ACCA's residual clause."  (*See* Emergency

Mot. for Authorization to File a Second or Successive Mot. Under 28 U.S.C. § 2255, at 1, *In re*

*Darryl Carter*, No. 16-3046 (D.C. Cir. May 31, 2016) (attached to Order of USCA, ECF No.

92).)

On June 23, 2016, the Court of Appeals granted the petition, finding that defendant had

"made a prima facie showing that his claims rely on a new, previously unavailable rule of

constitutional law, made retroactive to cases on collateral review by the Supreme Court."  (Order

of USCA at 1.)  The Court of Appeals' order directed that the petition be transmitted to the

district court for filing as an "abridged" motion pursuant to 28 U.S.C. § 2255.  (*Id.* (citing

---

was unnecessary given that § 924(c) applies to "present conduct" and does not require evaluation of a prior conviction.  *Id.* at 2327.  The Supreme Court rejected this argument.

[13] Under § 2255, a defendant cannot file a second or successive § 2255 motion without first obtaining leave from the Court of Appeals.  *See* 28 U.S.C. § 2255(h).  Defendant had previously filed a § 2255 motion claiming that his trial counsel's failure to notice an appeal was contrary to his instructions and deprived him of his Sixth Amendment right to the effective assistance of counsel.  After an evidentiary hearing, the motion was denied.  (*See* Memorandum Opinion at 7-12; ECF No. 40; Order, ECF No. 41.)  In 2009, he unsuccessfully sought leave to file a second § 2255 motion to raise a claim based on the Supreme Court's decision in *United States v. Chambers*, 522 U.S. 122 (2009).

Standing Order of the U.S. District Court for the District of Columbia issued June 2, 2016).) It further provided that

> The petition for leave to file a second or successive § 2255 motion was filed within one year of the Supreme Court's June 26, 2015 *Johnson* decision, so the "abridged" motion shall be deemed timely filed in district court.

*Id*. Finally, the order stated that the Court of Appeals "expresses no opinion as to the merits of petitioner's claims." *See id.*

Defendant's abridged motion was docketed in the district court on June 23, 2016 (*see* Def.'s Mot. to Vacate, ECF No. 93), but, as previously noted, further briefing was deferred pending the Supreme Court's resolution of *Beckles*, *Dimaya* and *Davis*.[14] (*See* Johnson Standing Order Nos. 2-7 (available at https://www.dcd.uscourts.gov/news/standing-orders-regarding-possible-sentence-reductions-pursuant-johnson-v-united-states-135-s).) On March 12, 2019, defendant filed his supplemental motion to vacate, the government responded, opposing any relief, and defendant filed a reply. (*See* Def.'s Supp. Mot. to Vacate, ECF No. 94 ("Mot."); Gov't Opp. to Mot., ECF No. 101 ("Opp."); Def.'s Reply, ECF No. 102 ("Reply").)

## ANALYSIS

Defendant's § 2255 motion raises both of the "residual clause" claims certified by the Court of Appeals. The government presents a number of arguments for why both claims should be denied. The Court will first address the § 924(c) claim and then turn to the career offender Guidelines claim.

---

[14] The Standing Orders applied to all defendants who were arguing that the decision in *Johnson* should be applied to similarly-worded residual clauses in other statutes or the Sentencing Guidelines.

# I.     THE § 924(c) CLAIM

Defendant claims that his conviction for using a shotgun during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (B)(i) must be vacated because (1) the residual clause in § 924(c)'s definition of a "crime of violence" is unconstitutionally vague; and (2) Hobbs Act robbery—the predicate offense for his § 924(c) conviction—does not otherwise qualify as a "crime of violence" under the remaining parts of the definition.  The government recognizes that in light of the Supreme Court's decision in *Davis*, it cannot dispute that the residual clause in § 924(c)(3)(B) is void for vagueness.  But it argues that defendant's § 924(c) claim should nonetheless be rejected either because (1) it is procedurally barred; or (2) Hobbs Act robbery qualifies as a "crime of violence" under the still-valid "elements" clause in § 924(c)(3)(A).  There is no need to address the government's procedural arguments[15] because the Court agrees with the government that Hobbs Act robbery is a "crime of violence" under the elements clause.

The Hobbs Act defines robbery as

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1).  The "elements clause" of § 924(c)(3) provides that "the term 'crime of violence' means an offense that is a felony and—(A) has as an element the use, attempted use, or

---

[15] The government argues that defendant's claim is barred by his plea agreement, untimely under 28 U.S.C. § 2255(f)(3), and barred by the limitations on second or successive § 2255 motions in 28 U.S.C. § 2255(h)(2) and § 2244(b).

threatened use of physical force against the person or property of another . . . ." 18 U.S.C.A. § 924(c)(3)(A).

Although the D.C. Circuit has not yet addressed the question, every other circuit to have considered it has concluded that Hobbs Act robbery constitutes a crime of violence under the elements clause. *See United States v. Garcia-Ortiz*, 904 F.3d. 102, 106 (1st Cir. 2018), *cert. denied*, 139 S. Ct. 1208 (2019); *United States v. Hill*, 890 F.3d 51, 54 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 844 (2019); *United States v. Robinson*, 844 F.3d 137, 140-41 (3d Cir. 2016), *cert. denied*, 138 S. Ct. 215 (2017); *United States v. Buck*, 847 F.3d 267, 274-75 (5th Cir.), *cert. denied*, 138 S. Ct. 149 (2017); *United States v. Gooch*, 850 F.3d 285, 292 (6th Cir.), *cert. denied*, 137 S. Ct. 2230 (2017); *United States v. Fox*, 878 F.3d 574, 579 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1603 (2018); *United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 1124 (2017); *United States v. Howard*, 650 Fed. App'x 466, 468 (9th Cir. 2016); *United States v. Melgar-Cabrera*, 892 F.3d 1053, 1060-66 (10th Cir.), *cert. denied*, 139 S. Ct. 494 (2018); *In re St. Fleur*, 824 F.3d 1337, 1340-41 (11th Cir. 2016). In addition, several judges in this jurisdiction have confronted this issue, and they have reached the same conclusion. *See United States v. Thomas*, No. 17-cr-0194, 2019 WL 1590101, at *1 (D.D.C. Apr. 12, 2019) (Moss, J.); Tr. of Status Conf. at 12-18, *United States v. Quinones*, No. 16-cr-223 (D.D.C. Nov. 8, 2018) (Chutkan, J.) (docketed at ECF No. 30); *United States v. McCallister*, No. 15-cr-0171, 2016 WL 3072237, at *1 (D.D.C. May 31, 2016) (A. Jackson, J.) ("In this opinion, the Court joins the chorus of judges declaring that a robbery in violation of the Hobbs Act is a 'crime of violence' for purposes of 18 U.S.C. § 924(c).").

Despite this extensive list of contrary precedent, defendant argues that "Hobbs Act robbery does not constitute a 'crime of violence' under § 924(c)'s elements clause because a

violation of the statute can result from threats to intangible property." (Mot. at 27.) Specifically, defendant argues that "the definition of a Hobbs Act robbery encompasses the fear of nonphysical harm to intangible economic interests, which is not the fear of 'physical injury to . . . property' required by the elements clause. Therefore, the statute does not categorically require the use of physical force—whether actual, attempted, or threatened." (*Id.*) But "[t]he Supreme Court has cautioned that, when applying the categorical approach, . . . there needs to be 'a realistic probability, not a theoretical possibility' that the statute will be applied in the way a defendant contends." *Thomas*, 2019 WL 1590101, at *3 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). The way to do this is "usually by 'point[ing] to his own case or other cases in which the . . . courts in fact did apply the statute in the special (nongeneric) manner for which he argues.'" *Id.* (quoting *Gonzales*, 549 U.S. at 193). In *Thomas* the court rejected the same argument defendant presents here because it concluded that defendant's "'legal imagination' aside, he cannot show any possibility that the robbery provision has been or will be applied in the way he speculates." *Id.* (quoting *Gonzales*, 549 U.S. at 193). This Court agrees with this analysis.

Accordingly, as Hobbs Act robbery is a "crime of violence" under the elements clause of § 924(c), defendant's claim that his § 924(c) conviction must be vacated must be rejected.

## II.    THE CAREER OFFENDER/MANDATORY GUIDELINES CLAIM

Defendant's other "residual clause" claim is that the 160-month sentence for Hobbs Act robbery conviction should be vacated so that he can be resentenced without application of the "career offender" sentencing Guideline.

As previously noted, when defendant was sentenced in 2004 it was agreed that he had at least two prior convictions for crimes of violence, as then defined in § 4B1.2 of the Guidelines,

so his sentencing range of 151-188 months was determined by the career offender Guideline.  At that time the Guidelines were "mandatory," and the judge imposed a 160-month sentence.

The version of the Guidelines in effect when defendant was sentenced defined a "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2(a) (emphasis added to "residual clause").[16]  Defendant now claims that he should not have been sentenced as a career offender because (1) the residual clause in the mandatory Guidelines is unconstitutionally vague; and (2) absent the residual clause, he no longer has two prior convictions that meet the definition of a crime of violence.  The government does not dispute that at least two of defendant's three prior convictions would not constitute "crimes of violence" absent the residual clause, but it raises a host of other procedural and substantive arguments in opposition to defendant's claim.

## A.    Procedural Barriers

The government contends that defendant's career offender claim is procedurally barred for four distinct reasons: (1) defendant waived his right to bring this claim in his plea agreement;

---

[16] The 2016 version of the Guidelines amended the definition of "crime of violence" by eliminating the residual clause and rewriting the enumerated-felonies clause to include "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)." *Compare* U.S.S.G. § 4B1.2(a)(2) (2003) *with* U.S.S.G. § 4B1.2(a)(2) (2016).

(2) the claim has been procedurally defaulted; (3) the claim is barred by the limitations on second or successive § 2255 motions in 28 U.S.C. § 2255(h); and (4) the claim is untimely under 28 U.S.C. § 2255(f)(3).

### 1. Waiver in Plea Agreement

Defendant's plea agreement included the following language:

> **Limited Waiver of Appeal Rights**.  Your client is aware that federal law, specifically 18 U.S.C. §3742, affords him the right to appeal his sentence.  Your client is aware that the parties' calculation of the offense level under the Sentencing Guidelines is not a promise of the sentence to be imposed on him and is not binding on the Judge.  Knowing that, your client waives the right to appeal his sentence or the manner in which it was determined pursuant to 18 U.S.C. §3742, except to the extent that (a) the Court sentences your client to a period of imprisonment longer than the statutory maximum, or (b) the Court departs upward from the applicable Sentencing Guideline range pursuant to the provisions of U.S.S.G. §5K.2.  *Further, your client reserves his right to make a collateral attack upon his sentence pursuant to 28 U.S.C. §2255, if new and currently unavailable information becomes known to him*.  In agreeing to this waiver, your client is aware that his sentence has not yet been determined by the Court.  Realizing the uncertainty in estimating what sentence the Court ultimately will impose, your client knowingly and willingly waives his right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the government, in this agreement.

(Plea Agreement ¶ 7 (emphasis added).)

The government argues that the italicized sentence in ¶ 7 should be interpreted as a waiver of defendant's right to bring his career offender claim.  It reaches this conclusion, arguing that: (1) the sentence waives defendant's right to bring a § 2255 claim unless it is based on "new and previously unavailable information"; (2) the phrase "new and previously unavailable information" is "a term best understood as a reference to *factual* information or evidence that might establish his innocence," not "subsequent *legal* developments"; and (3) defendant's career offender claim is covered by the waiver because it is based on subsequent legal developments.  (Opp. at 13.)

The fatal flaw in the government's argument is that in construing a plea agreement, a court cannot "bar the door . . . if [the defendant's] waiver only arguably or ambiguously forecloses his claims." *United States v. Hunt*, 843 F.3d 1022, 1027 (D.C. Cir. 2016). As the D.C. Circuit explained in *Hunt*:

> A plea agreement is a contract and so we advert to principles of contract law in interpreting it. Ambiguity in a plea agreement, as in any other type of contract, is construed against the drafter. . . . The government drafted [the defendant's] plea agreement. If the agreement does not unambiguously preclude [the defendant] from appealing the issues he presents to us, he has not knowingly, intelligently and voluntarily waived them.

*Id.* (internal citations omitted). The Court in *Hunt* went on to reject an interpretation of a plea agreement that would have waived defendant's right to appeal a condition of supervised release because it was "not convinced . . . that the *only* permissible interpretation of the provision [wa]s the one [the government proposed] or that [the defendant] read it that way when he signed the plea agreement." *Id.* at 1028; *see also Cross v. United States*, 892 F.3d 288, 298-99 (7th Cir. 2018) (to the extent the waiver of collateral challenges in a plea agreement was "ambiguous," it "should not apply to [the defendant's] section 2255 motion" challenging his mandatory Guidelines sentence).

Here, the government's proposed interpretation, while plausible, is certainly not the "only permissible interpretation" of the relevant language. *Hunt*, 843 F.3d at 1028. Indeed, the government never even argues that the plea agreement "unambiguously preclude[s]" defendant's claim—only that it is "best understood" to mean what the government wants it to mean. Accordingly, the phrase "new and previously unavailable information" cannot be read to exclude

subsequent legal developments, and, therefore, the Court disagrees with the government's contention that defendant's plea agreement precludes his career offender claim.[17]

## 2. Procedural Default

The government also argues that defendant's career offender claim is barred by the "procedural default rule" because he did not raise it at sentencing or on direct appeal. (Opp. at 14.)

"The procedural default rule generally precludes consideration of an argument made on collateral review that was not made on direct appeal, unless the defendant shows cause and prejudice." *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008). A defendant can show cause where a claim "is so novel that its legal basis [was] not reasonably available to counsel" at the time of appeal. *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). To establish prejudice, a defendant "must *at least* demonstrate that 'there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different.'" *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003) (alteration in original) (quoting *United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998) (quoting *Strickland v. United States*, 466 U.S. 668, 694 (1984))). In addition, the Court may "assume for purposes of [the prejudice] analysis that there was [ ] error." *Id.* at 1145.

Defendant has shown both cause and prejudice. Cause is established because, as the D.C. Circuit has observed, "no one . . . could reasonably have anticipated *Johnson*." *United States v.*

---

[17] Having reached this conclusion, the Court does not need to reach defendant's arguments that "collateral waivers can only give up known rights and thus any waiver could not have relinquished a claim based on *Johnson*" or that "enforcing a waiver in the face of a *Johnson* challenge would be a miscarriage of justice and therefore any waiver must not be enforced." (Reply at 19-21.)

*Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016). Accordingly, there is widespread agreement that "[u]ntil the Supreme Court announced its new rule in *Johnson*, [a defendant] did not have a reasonable basis upon which to challenge the constitutionality of the ACCA's residual clause." *United States v. Booker*, 240 F. Supp. 3d 164, 170 (D.D.C. 2017) (Friedman, J.) (internal quotations omitted); *see also*, *e.g.*, *United States v. Wilson*, 249 F. Supp. 3d 305, 315 (D.D.C. 2017) (Huvelle, J.); *United States v. Brown*, 249 F. Supp. 3d 287, 292-93 (D.D.C. 2017) (Sullivan, J.); *United States v. Taylor*, 272 F. Supp. 3d 127, 136 (D.D.C. 2017) (Kollar-Kotelly, J.). The same holds true for challenging the constitutionality of the residual clause in the Guidelines. *See United States v. Hammond*, 351 F. Supp. 3d 106, 123-24 (D.D.C. 2018) (Howell, C.J.).

As for showing prejudice, the D.C. Circuit has held that in the sentencing context, "actual prejudice" means that the alleged error at sentencing must have "worked to [the defendant's] *actual* and substantial disadvantage." *United States v. Hicks*, 911 F.3d 623, 627 (D.C. Cir. 2018) (quoting *Pettigrew*, 346 F.3d at 1144), *cert. denied,* 139 S. Ct. 2651 (2019). For example, a § 2255 petitioner challenging a sentence suffers prejudice when, in light of new case law, the petitioner "would have been sentenced to prison for [several years] less than the imposed sentence." *United States v. McKie*, 73 F.3d 1149, 1154 (D.C. Cir. 1996); *see also Hammond*, 351 F. Supp. 3d at 123-24 ("prejudice visited upon [the defendant] is plain [where the defendant] was sentenced based on a mandatory [G]uidelines' range of 360 months to life imprisonment," which was much higher than the range without the career-offender designation); *Brown*, 249 F. Supp. 3d at 293 (possibility that a defendant's sentence will be reduced by at least five years establishes prejudice). This is precisely defendant's situation. Assuming that there was error— that the residual clause in the mandatory career offender Guideline is void for vagueness—

defendant's Guideline range would have been significantly lower[18] and, as the Guidelines were mandatory, almost certainly would have resulted in a much shorter sentence.

As defendant has shown both cause and prejudice for not previously raising his career offender claim, this claim is not barred by the procedural default rule.

### 3. Limits on Successive § 2255 Motions: § 2255(h)(2) and § 2244(b)

The government next argues that defendant's motion is barred by the limitation on second or successive motions contained in § 2255(h) and § 2244(b).

Section 2255(h) provides that:

A second or successive [2255] motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

> **(1)** newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> **(2)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

---

[18] A full presentence report was never prepared in this case. At the time of sentencing, defendant's attorney stated in open court that defendant's combined Guideline range without the career offender designation would have been 190-207 months, which corresponds to an offense level of 21, a criminal history category of V, and a Guideline range of 70-97 for the Hobbs Act robbery count plus the 120-month mandatory minimum for the § 924(c) conviction. (*See* Sent. Tr. at 8). But the current motion asserts that without application of the career offender Guideline, defendant would have a total offense level of 17, a criminal history category of V, and a Guideline range of 46-57 months for the Hobbs Act robbery conviction. (*See* Reply at 25 n.14.) Given this discrepancy, the Court asked the Probation Office for its view, it has concluded that defendant would have a total offense level of 19, a criminal history category of V, and a Guideline range of 57-71 months for the Hobbs Act robbery conviction. At this point, the Court need not decide which, if any, of these calculations is correct. But assuming that the Probation Office is correct and that defendant's Guideline range for the Hobbs Act robbery is 57-71 months, his combined Guideline range with the additional 120 months would be 177-191 months. Defendant has already served approximately 192 months, so he is eligible for immediate release if he succeeds on this motion.

28 U.S.C.A. § 2255(h).  Section § 244(b)(3)(C) provides that "[t]he court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a *prima facie* showing that the application satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3) (emphasis added); *see also In re Williams*, 759 F.3d 66, 69-70 (D.C. Cir. 2014) ("the motion must make a *prima facie* showing that it contains a previously unavailable new rule of constitutional law made retroactive on collateral review by the Supreme Court"). Section § 2244(b)(4) requires that once a certified claim has been filed in the district court, the "district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."  28 U.S.C. § 2244(b)(4).

The government argues that the interplay of these two provisions means that even though the D.C. Circuit concluded that defendant's career offender claim "made a prima facie showing that his claims rely on a new, previously unavailable rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court" (Order of USCA at 1), to avoid dismissal now he must meet the more stringent requirement of actually "showing" that the motion satisfies the requirements of § 2255(h)(2)—that his career offender claim, in fact, "contains" the "rule of constitutional law" recognized in *Johnson*.  28 U.S.C. § 2255(h)(2). ).  (Opp. at 24-25.)  And, according to the government, defendant cannot meet this standard because the "rule of constitutional law" that his career offender claim "contains" is not the same "rule of constitutional law" recognized in *Johnson*.  (*Id*. at 25.)

As defendant points out, there is an argument to be made that the government is

misinterpreting these two statutory sections,[19] and the D.C. Circuit has not rejected this argument. However, courts to date have generally accepted the government's view that a defendant proceeding on a second or successive § 2255 motion in the district court must "show" that the motion satisfies the requirements of (h)(2), beyond the prima facie showing required for certification. *See, e.g., Hammond*, 351 F. Supp. 3d at 121 ("Despite [] certification, [a defendant] has not cleared § 2255(h)(2)'s gatekeeping function. . . . Section 2244(b)(4) calls for a more incisive inquiry than the court of appeals performs at the certification stage."); *United States v. Peppers*, 899 F.3d 211, 220 (3d Cir. 2018) ("But, even after we authorize a second or successive petition, § 2244 still requires the district court to 'dismiss any claim presented in a second or successive application . . . unless the applicant shows that the claim satisfies the [gatekeeping] requirements[.]'" (quoting § 2244(b)(4))).[20] Absent any contrary authority, the Court will assume that defendant must meet this higher standard to stave off dismissal.

Turning then to the dispositive issue: does defendant's career offender claim "contain . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme

---

[19] *See* Mot. at 11 n.2 ("Although the court of appeals' certification is based only on a *prima facie* showing, *see* § 2244(b)(3)(C), the interplay between § 2244 and § 2255 leaves some doubt as to whether the district court must independently assess whether a petitioner has met § 2255(h)(2)'s procedural hurdle. Section 2255 itself is silent about the district court's obligations vis-à-vis § 2255(h)'s procedural requirements, referring only to the *court of appeal*'s obligations 'as provided in section 2244.' *See* § 2255(h). Meanwhile, § 2244(b)(4) states that '[a] district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section,' *i.e.,* section 2244, but the only portion of § 2244 that repeats the same language as § 2255(h)(2) is explicitly concerned with 'a claim presented in a second or successive habeas corpus application *under section 2254*,' *i.e.,* a *state* habeas motion. *See* § 2244(b)(2)(A) (emphasis added).").

[20] *See also United States v. Murphy*, 887 F.3d 1064, 1068 (10th Cir. 2018); *Johnson v. United States*, 720 F.3d 720, 720-21 (8th Cir. 2013); *Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001); *United States v. Villa-Gonzalez*, 208 F.3d 1160, 1165 (9th Cir. 2000); *Bennett v. United States*, 119 F.3d 468, 470 (7th Cir. 1997).

Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).  It is undisputed that *Johnson* announced a previously unavailable "new rule of constitutional law" that has been made retroactive to cases on collateral review.  *See Welch*, 136 S. Ct. at 1265.  And, as explained herein, the Court is persuaded to adopt an expansive reading of § 2255(h)(2), and thus, it concludes that defendant's motion "contain[s]" the rule recognized in *Johnson*.

First, whatever the scope and application of the *Johnson* "rule" is, which is obviously disputed, if one gives the word "contain" its usual and ordinary meaning, it is hard to accept the government's argument that defendant's motion does not "contain" the rule recognized in *Johnson*.  *See, e.g.*, https://www.merriam-webster.com/dictionary/contain (in relevant part, defining "contain" as "to have within : hold" or "comprise, include"); https://www.dictionary.com/browse/contain (in relevant part, defining "contain" as "to have as contents or constituent parts; comprise; include").  Other courts have reached the same conclusion.  For example, in *Cruz v. United States*, the court concluded that "the meaning of 'contain' requires the petition to rely on the new rule to substantiate its claim, but [it] does not require the new rule to conclusively decide the claim on its facts."  No. 11-cv-787, 2018 WL 1541898, at *13 (D. Conn. Mar. 29, 2018).  Rather, the court explained, "[e]ven if [a defendant's] claim may require a 'non-frivolous extension of [the] qualifying rule to a set of facts not considered by the [Supreme] Court," the "claim, nonetheless, depends on the rule announced in [the Supreme Court's case]."  *Id.* at *14.

Next, Congress's use of "rule," rather than "holding," indicates that it did not intend to strictly limit the reach of the phrase "new rule" required by section 2255(h)(2) to a case's "technical holding."  *Moore v. United States*, 871 F.3d 72, 82 (1st Cir. 2017).

Moreover, this reading of (h)(2) is supported, if not required, by the D.C. Circuit's decision in *In re Williams*, where it made clear that the gatekeeping function performed by subsection (h)(2) should not cross over into evaluating whether a new rule applies in a particular case. *See In re Williams*, 759 F.3d at 70-71 ("The government's argument concerning the application of the new rule . . . to this case, *i.e.,* how [the new rule] applies . . . is a question for the district court in the first instance, not the court of appeals."); *see also Peppers*, 899 F.3d at 220 ("Only after a defendant's second or successive motion has made it past the gatekeeping requirements of § 2255(h) may the district court consider the merits of the claims."); *In re Hoffner*, 870 F.3d 301, 308 (3d Cir. 2017) ("[W]e do not address the merits at all in our gatekeeping function."). Even though the Court in *In re Williams* was only assessing whether the defendant had made a *prima facie* showing that his claim satisfied the requirements for bringing a second or successive motion, the difference between its test and the standard the district court applies is only a matter of degree, not substance. In other words, if the Court of Appeals is not supposed to consider whether a new rule applies to a particular set of circumstances when it is deciding whether to certify a claim, it follows that neither should the district court.

Finally, and critically, the stricter reading the government urges has the potential, borne out in the present case, *see infra* Section II.B., to prevent defendants with meritorious claims from obtaining any relief. While § 2255(h)(2) serves the important goals of promoting finality and preventing frivolous § 2255 motions, it should not be extended to prevent courts from considering meritorious motions. The gatekeeping function is served as long as the district court is satisfied that the motion contains a new rule of constitutional law. Indeed, "if the gate-keeping inquiry under section 2255(h) includes whether the new rule of constitutional law applies to the

petitioner, there would often likely remain no issue to be decided on the merits." *Cruz*, 2018 WL 1541898, at *10 n.9; *see also In re Hoffner*, 870 F.3d at 309 ("At a policy level, a flexible, case-by-case approach advances two ends—the need to meet new circumstances as they arise, and the need to prevent injustice."). Far better to leave that analysis for the merits and then, if defendant's claim is meritorious, be able to order the relief he is entitled to.[21]

For the foregoing reasons, the Court finds that defendant's career offender claim satisfies the requirement in § 2255(h)(2) and § 2244(b)(4) that it contain a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review.

### 4. Timeliness: § 2255(f)(3)

The government's final procedural argument is that defendant's career offender claim is untimely.

Section 2255(f) establishes a one-year period of limitations for filing a § 2255 motions, which runs "from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

---

[21] *But see, e.g.*, *United States v. Pullen*, 913 F.3d 1270, 1284-85 (10th Cir. 2019) (to satisfy § 2255(h)(2), application of *Johnson* rule to mandatory Guidelines must be "dictated by precedent"), *petition for cert. filed*, No. 19-5219 (U.S. July 17, 2019).

28 U.S.C. § 2255(f)(3).

Defendant relies solely on § 2255(f)(3). He contends that his claim is timely under that provision because he is asserting a right that was initially recognized by the Supreme Court in *Johnson*, the Supreme Court has made that right retroactively applicable to cases on collateral review in *Welch*, and his § 2255 motion was filed within one year of the decision in *Johnson*.[22] According to defendant, the "right" recognized in *Johnson* and asserted in his motion is "'the right not to have his sentence dictated by the unconstitutionally vague language of the mandatory residual clause.'" (Mot. at 23 (quoting *Cross*, 892 F.3d at 294).) The government disagrees, arguing that § 2255(f)(3) does not apply because the "right" defendant is asserting is not the same as the "right" that the Supreme Court recognized in *Johnson*. According to the government, the right recognized in *Johnson* is limited to its holding—that the ACCA's residual clause is unconstitutionally vague—while the right defendant is asserting is the right not to be sentenced under the unconstitutionally vague residual clause in the mandatory Guidelines, which right the Supreme Court has not yet recognized.

Although a number of Circuits have endorsed the government's position,[23] the D.C. Circuit is not one of them. In addition, there is contrary authority from the Seventh Circuit, *see Cross*, 892 F.3d at 294; a strong suggestion from the First Circuit that it would agree with *Cross*,

_____

[22] In *Dodd v. United States*, the Supreme Court held that the § 2255(f)(3) limitation period runs from the date on which the Supreme Court recognizes the new right, not the date on which the new right is made retroactive. 545 U.S. 353, 357-58 (2005).

[23] *See United States v. Green*, 898 F.3d 315, 321 (3d Cir. 2018), *cert. denied,* 139 S. Ct. 1590 (2019); *United States v. Brown*, 868 F.3d 297, 303 (4th Cir. 2017), *cert. denied,* 139 S. Ct. 14 (2018); *Raybon v. United States*, 867 F.3d 625, 629 (6th Cir. 2017), *cert. denied,* 138 S. Ct. 2661 (2018); *Russo v. United States*, 902 F.3d 880, 883 (8th Cir. 2018), *cert. denied,* 139 S. Ct. 1297 (2019); *United States v. Blackstone*, 903 F.3d 1020, 1026-27 (9th Cir. 2018), *cert. denied,* 139 S. Ct. 2762 (2019); *United States v. Greer*, 881 F.3d 1241, 1248 (10th Cir. ), *cert. denied,* 139 S. Ct. 374 (2018).

*see Moore*, 871 F.3d at 82 ("[W]e are not sufficiently convinced by the recent decisions of the Fourth and Sixth Circuits concluding that first § 2255 motions that sought to apply *Johnson[]* to the [mandatory] [G]uidelines were outside the statute of limitations for such motions."); and a persuasive rejection of the government's position by the Chief Judge in this jurisdiction, *see Hammond*, 351 F. Supp. 3d at 119, which the government did not appeal.[24] Moreover, several Court of Appeals judges have noted that they believe their Circuit has reached the wrong conclusion. *See Hodges v. United States*, 778 Fed. App'x 413, 415 (9th Cir. 2019) (Berzon, J., concurring) ("I believe the Seventh and First Circuits have correctly decided this question. However, because [*United States v. Blackstone*, 903 F.3d 1020, 1026 (9th Cir. 2018)] controls here, I concur in the judgment."); *Chambers v. United States*, 763 F. App'x 514, 519 (6th Cir. 2019) (Moore, J., concurring) ("I concur in the judgment in this case, but only because *Raybon v. United States*, 867 F.3d 625, 629-30 (6th Cir. 2017), is binding on this panel . . . I write separately because *Raybon* was wrong on this issue. We should accept the invitation to rehear this case en banc and overturn *Raybon*."); *United States v. Brown*, 868 F.3d 297, 304 (4th Cir. 2017) (Gregory, C.J., dissenting) ("The majority reads [§ 2255 (f)(3)] to mean that a petitioner must assert the right as expressed in the Supreme Court's narrow holding newly recognizing that right, and where the four corners of that holding do not encompass the precise facts underlying a petitioner's claim, § 2255(f)(3) is not satisfied. But § 2255(f)(3) contains no such requirement, and in my view, a newly recognized right is more sensibly read to include the reasoning and

---

[24] Another judge in this district has reached the opposite conclusion. *See United States v. Arrington*, No. 1:00-cr-00159, 2019 WL 4644381, at *4 (D.D.C. Sept. 24, 2019) (Lamberth, J.) (dismissing claim as untimely because "the right not to have a sentence fixed by an unconstitutionally vague residual clause . . . is not the right recognized by the Court in *Johnson*").

principles that explain it. And where a petitioner asserts *that* right, with all its contours and complexities, I would find that he or she satisfies § 2255(f)(3)."); *United States v. London*, 937 F.3d 502, 510-11 (5th Cir. 2019) (Costa, J., concurring in the judgment) ("I write separately because we are on the wrong side of a split over the habeas limitations statute. Our approach fails to apply the plain language of the statute and undermines the prompt presentation of habeas claims the statute promotes. . . . We have improperly read a success requirement into a statute that requires only the assertion of a right.")

This Court finds persuasive the reasoning of the courts and judges who have endorsed a less restrictive reading of 2255(f)(3) and found that a claim challenging the residual clause in the mandatory career offender Guideline is asserting the same right as the Supreme Court recognized in *Johnson*. *See, e.g.*, *Brown*, 868 F.3d at 304 (Gregory, C.J., dissenting) ("In *Johnson*, the Supreme Court recognized a defendant's right not to have his or her sentence fixed by the application of the categorical approach to an imprecise and indeterminate sentencing provision, and it struck down the ACCA's residual clause as inconsistent with that newly recognized right. Because [defendant] asserts that same right, I would find his petition timely under § 2255(f)(3), even though his challenge is to the residual clause under the mandatory Sentencing Guidelines, rather than the ACCA.").

Moreover, if one accepts the government's argument and interprets § 2255(f)(3) restrictively, and the Supreme Court continues to refuse to take a case on certiorari, a defendant such as Carter will never be able to challenge his sentence, even if he has a meritorious claim. *See London*, 937 F.3d at 510 (Costa, J., concurring) ("[T]he Supreme Court often will never address a particular application of one of its decisions; that job is left largely to the lower courts. And for the *Johnson* claim London asserts, there is a unique impediment to Supreme Court

review.  Because it asks whether *Johnson* applies to the now-abandoned mandatory Guidelines, a cramped reading of the limitations provision prevents the only litigants affected by this issue from ever pursuing it.").  As Justice Sotomayor noted in her dissent from the denial of certiorari in *Brown*:

> Today this Court denies petitioners, and perhaps more than 1,000 like them, a chance to challenge the constitutionality of their sentences.  They were sentenced under a then-mandatory provision of the U.S. Sentencing Guidelines, the exact language of which we have recently identified as unconstitutionally vague in another legally binding provision. These petitioners argue that their sentences, too, are unconstitutional. This important question, which has generated divergence among the lower courts, calls out for an answer. Because this Court's decision to deny certiorari precludes petitioners from obtaining such an answer, I respectfully dissent.

*Brown v. United States*, 139 S. Ct. 14, 14 (2018) (Sotomayor, J., joined by Ginsburg, J.) (dissenting from denial of certiorari in *Brown* and nine other cases); *see also Grummitt v. United States*, 139 S. Ct. 2707 (2019) (Sotomayor, J., joined by Ginsburg, J.) (dissenting from denial of certiorari for the same reasons set forth in *Brown*).  The unfairness of this situation is particularly severe in cases such as defendant's because he has already served more time than he would likely receive if resentenced without application of the career offender Guideline, but if his claim is deemed untimely, he may never get a resolution of his claim, and he will have to spend another seven years in prison.  *See supra* note 19.  Defendant should not be penalized by the Supreme Court's refusal to grant certiorari so that he is blocked from challenging the constitutionality of his sentence under *Johnson* and its progeny.  Under these circumstances, it is incumbent on lower courts to address the merits of defendant's claim.

Accordingly, the Court concludes that defendant's career offender claim is timely under § 2255(f)(3).

**B.     Merits**

Having concluded that defendant is not procedurally barred from raising his career

offender claim, the question remains whether the Supreme Court's decisions in *Johnson* and

*Welch* require retroactive invalidation of the residual clause in the mandatory career offender

Guideline.

To date, neither the Supreme Court nor the D.C. Circuit has addressed this question. *See*

*Beckles*, 137 S. Ct. at 903 n.4 (Sotomayor, J., concurring) (decision in *Beckles* "leaves open the

question whether defendants sentenced to terms of imprisonment before our decision in [*Booker*]

. . . may mount vagueness attacks on their sentences"); *see also Brown*, 139 S. Ct. at 15

(Sotomayor, J., dissenting from denial of certiorari) ("You might think that if a sequence of

words that increases a person's time in prison is unconstitutionally vague in one legally binding

provision, that same sequence is unconstitutionally vague if it serves the same purpose in another

legally binding provision.  Indeed, after *Johnson*, the Sentencing Commission deleted the

residual clause from the Guidelines.  *See* USSG § 4B1.2(a)(2) (Nov. 2016).  But for petitioners

like Brown, who were sentenced long before *Johnson*, this Court has thus far left the validity of

their sentences an open question."); *see Hicks*, 911 F.3d at 626 ("[T]he Supreme Court [in

*Beckles*] left open the question of whether similar language in a *mandatory* Sentencing

Guidelines provision—that is, a Sentencing Guidelines provision that was applied prior to

*Booker*—would be unconstitutionally vague.").[25]  And, as previously noted, the majority of

---

[25] The court in *Hicks* did not reach the question because it concluded that the defendant could not
establish the prejudice necessary to overcome his procedural default.  *See Hicks*, 911 F.3d at 626.
The issue has been briefed in a case pending before the D.C. Circuit, but the Court does not need
to reach it to resolve the appeal.  *See United States v. Carr*, 314 F. Supp. 3d 272, 277 (D.D.C.
2018), *appeal filed*, No. 18-3053 (D.C. Cir. Aug. 15, 2018) (argued Oct. 16, 2019).

Circuits have found claims challenging the mandatory Guidelines to be untimely or otherwise procedurally barred and thus not reached the merits. *See supra* notes 23 & 25.

But those courts or judges who have reached the issue have usually concluded that invalidation is compelled by the Supreme Court's decision in *Johnson*. *See Cross*, 892 F.3d at 299 ("Under *Johnson*, the [G]uidelines residual clause is unconstitutionally vague insofar as it determined mandatory sentencing ranges for pre-*Booker* defendants."); *Hammond*, 351 F. Supp. 3d at 129 ("*Johnson*'s rule—the right not to have a sentence fixed by an indeterminate and wide-ranging residual clause—provides the answer to this case."); *United States v. Moore*, No. 1:00-cr-10247, 2018 WL 5982017, at *2 (D. Mass. Nov. 14, 2018) ("this Court holds the pre-*Booker* career offender [G]uideline void for vagueness."); *United States v. Roy*, 282 F. Supp. 3d 421, 425-27 (D. Mass. 2017) (same); *Reid v. United States*, 252 F. Supp. 3d 63, 64 66-68 (D. Mass. 2017) ("*Beckles* itself makes clear that its holding does not govern sentences imposed under the non-advisory, pre-*Booker* sentencing regime, and . . . the logic of the *Johnson* decisions makes them fully applicable in a pre-*Booker*, mandatory Guidelines context."); *Brown*, 868 F.3d at 304 (Gregory, C.J., dissenting) ("I would further find that *Johnson* compels the conclusion that the residual clause under the mandatory Guidelines is unconstitutionally vague, and I would grant [the defendant's] petition and remand for resentencing.").[26]

This Court agrees that the Supreme Court's decision in *Johnson* compels the conclusion that the residual clause in § 4B1.2 of the mandatory [S]entencing [G]uidelines is void for vagueness. First, the "materially identical" residual clause in the mandatory Guidelines suffers

---

[26] *But see In re Griffin*, 823 F.3d 1350, 1354 (11th Cir. 2016) ("The Guidelines—whether mandatory or advisory—cannot be unconstitutionally vague because they do not establish the illegality of any conduct and are designed to assist and limit the discretion of the sentencing judge.").

from the "same two faults" as the residual clause in the ACCA, and thus it too produces "unacceptable 'unpredictability and arbitrariness.'" *Cross*, 892 F.3d at 299-300 (quoting *Johnson*, 135 S. Ct. at 2558). Second, the "mandatory [g]uidelines are subject to attack on vagueness grounds" because the "incorporation of the vague residual clause impeded a person's efforts to 'regulate his conduct so as to avoid particular penalties' and left it to the judge to 'prescribe the . . . sentencing range available'"; thus, "unlike the advisory [G]uidelines, the mandatory [G]uidelines implicated the 'twin concerns' of the vagueness doctrine." *Id.* at 306 (quoting *Beckles*, 137 S. Ct. at 894-95).

As the government has conceded that defendant's prior convictions are not "crimes of violence" absent the residual clause, defendant should not have been sentenced as a career offender. Accordingly, defendant's motion to vacate the sentence for his Hobbs Act robbery conviction will be granted so that he can be resentenced without application of the career offender designation.

## CONCLUSION

For the foregoing reasons, defendant's motion and supplemental motion to vacate are granted in part and denied in part. The motion to vacate the § 924(c) conviction is denied, but the motion to vacate the career offender sentence for the Hobbs Act robbery conviction is granted. A separate Order accompanies this Memorandum Opinion.

ELLEN S. HUVELLE
United States District Judge

Date: October 29, 2019